```
                   UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION


_____

JULIE PEFFER and JESSE PEFFER,

       Plaintiffs,

    v.                                       File No. 1:15-CV-78

MIKE STEPHENS, NATHAN EDWARDS,
and JASON COON,

       Defendants.
_____/


       Hearing re:  Plaintiffs' Motion for Protective Order


Before

                 THE HONORABLE ELLEN S. CARMODY
                   United States Magistrate Judge
                         October 5, 2015











Digital audio recording transcribed by:

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter
```

APPEARANCES

J. NICHOLAS BOSTIC
909 N. Washington Ave.
Lansing, MI 48906
Attorney for Plaintiffs

LISA J. VOGLER
57 N. Michigan Ave.
Beulah, MI 49617
Attorney for Defendant
Nathan Edwards

SANDRA J. DENSHAM
333 Bridge St., NW
Suite 530
Grand Rapids, MI 49501
Attorney for Defendant
Jason Coon

MARK E. DONNELLY
Assistant Attorney General
P.O. Box 30736
Lansing, MI 48909
Attorney for Defendant
Mike Stephens

```
 1                                       Grand Rapids, Michigan
 2                                       October 5, 2015
 3                                       11:14 a.m.
 4                                 -  -  -
 5
 6                      P R O C E E D I N G S
 7
 8           THE CLERK:  The Court calls case 1:15-CV-78, Peffer
 9   v. Stephens, et al.
10           THE COURT:  Good morning.  Would counsel please put
11   your appearances on the record?
12           MR. BOSTIC:  Good morning, Your Honor.  Nick Bostic
13   on behalf of the plaintiffs.
14           THE COURT:  Good morning.
15           MS. VOGLER:  Lisa Vogler on behalf of Nathan
16   Edwards.
17           THE COURT:  Good morning.
18           MS. VOGLER:  Good morning.
19           MS. DENSHAM:  Good morning.  Sandra Densham on
20   behalf of Defendant Coon.
21           THE COURT:  Okay.  Good morning.
22           MR. DONNELLY:  Good morning, Your Honor.  Mark
23   Donnelly on behalf of Defendant Stephens.
24           THE COURT:  Okay.  Good morning to you.
25           I have read the motion for a protective order in
```

1    this matter.  There's been also expedited consideration
2    requested, and that is docket 29.  That's plaintiffs' motion.
3              I've read Defendant Edwards' response to the
4    motion.  That's the only response that I saw.  I also read the
5    complaint in this matter and the Joint Status Report to try to
6    get a little bit of a feel for what the background facts are
7    here, and Mr. Bostic, I admit to some bemusement about why I'm
8    here.  I don't know exactly what you're asking for, to tell
9    you the truth.
10             MR. BOSTIC:  The timing of the deposition is the
11   problem at this point.  It was initially set for October 2.
12   Mr. Froehlich had a conflict, so she agreed to set it for
13   October 9.  This would be the deposition of plaintiffs by
14   Defendant Edwards.
15             THE COURT:  Okay.  And this case was filed early
16   this year.  What is your discovery deadline?
17             MS. VOGLER:  December 18th, Your Honor.
18             MR. BOSTIC:  After I did the motion for protective
19   order -- well, in the midst of the e-mail discussions which I
20   attached to the motion, I had asked for Ms. Vogler to
21   reconsider setting the depositions for my clients until after
22   we get either the property returned from 2012 or we have
23   copies of everything that are on it.  The problem is the
24   police in 2012 seized a lot of records that had to do with --
25   well, the records in the computers actually contained a lot of

```
 1    their communications with their attorneys.  These are all
 2    state proceedings and they're now closed.  But the property
 3    was seized in connection with those state proceedings.
 4           THE COURT:  Okay.
 5           MR. BOSTIC:  And the clients have been without that
 6    information for three years now.  So the depositions, I was a
 7    little concerned about the airfare because, I put that in the
 8    motion, the difference between buying a ticket 30 days out
 9    versus within 30 days is -- it depends, but it can be
10    significant.  But that's really not the problem.  My concern
11    is that they try to depose my clients on a 2012 incident where
12    they've had nothing to review.
13           THE COURT:  Well, let me ask you this, Mr. Bostic,
14    and this question occurred to me when I read your papers.  I
15    did perceive that part of your problem with this was these
16    documents, but I read the complaint and I guess I don't really
17    understand how relevant -- I don't know what the documents
18    are.  I am loath to get involved in ordering state police to
19    turn over documents when that's not part of this case.
20           And part of my reaction, to be candid with you, was
21    that's defendants' tough luck, then, if your clients can't
22    respond to some of the questions because they don't remember
23    what's in the documents.  It would seem to me it would be in
24    defendants' interest to make sure that you were able to get
25    them well-prepared.  But, you know, maybe that's not true from
```

```
 1   their point of view.
 2           MR. BOSTIC:  Well, if they were -- they've lived out
 3   of state the entire time, so Julie Peffer lives in Florida.
 4   So if my clients were local, I would never have brought this.
 5   But my concern is they're going to pay for airfare and come up
 6   here for depositions that are going to be fruitless.  Now,
 7   granted --
 8           THE COURT:  Well, I can solve that problem.  If the
 9   documents or copies of the documents are not returned to them
10   in sufficient time prior to the deposition, I'm not going to
11   have them come up here and be deposed again.  Any follow-up
12   deposition that defendants might claim they need because they
13   were not properly prepared can be taken where they are.
14           MR. BOSTIC:  Okay.  Well, then, let me give you an
15   update as part of it.
16           THE COURT:  Okay.
17           MR. BOSTIC:  On September 24th I sent plaintiffs'
18   document production requests to Defendant Edwards.  On
19   September 30th, 2015, she responded.  But the problem is the
20   copies of the seized records -- well, let me back up.  What
21   she sent me was police reports.
22           THE COURT:  Right.
23           MR. BOSTIC:  I already had those from the criminal
24   proceeding.  I had the basics, anyway.  Now, in her response,
25   the discovery response, she indicated that she sent a disk
```

```
 1    with photos.  I opened up that disk and it contains four sets
 2    of the state police computer system where they keep track of
 3    property.  There weren't any photographs.  I don't -- maybe
 4    I'm missing a disk somewhere, but I don't have the photographs
 5    that she says were disclosed.
 6           But then in the individual answers to the document
 7    production requests, most of them she's stating an objection
 8    where she's saying Defendant Edwards doesn't have these.  They
 9    are in possession of the Traverse Narcotics Team/Michigan
10    State Police and we can't produce them.  We're not going to
11    produce them.  You know who has them.  And that is not how
12    Rule 34 works.
13           Now, I'm not asking you to rule on Rule 34 or the
14    deficiencies in her response because I haven't done the
15    request for concurrence and filed the motion.  But my point is
16    here we are on Monday the 5th.  They want to depose my clients
17    Friday the 9th.  In the interim I got this discovery response
18    that says, Well, we can't do that because the records are over
19    there.
20           THE COURT:  Right.
21           MR. BOSTIC:  Now, that's not getting me anywhere.
22    So I understand, and, you know, I was loath to bring this
23    motion, Your Honor.  This is the first -- I think the first
24    discovery motion, maybe, that I've brought in eight years in
25    federal practice.
```

```
 1              THE COURT:  I don't recall having -- curling my lip
 2   at you prior to this.
 3              MR. BOSTIC:  Right, and I don't do this.  But the --
 4              THE COURT:  Let me ask you this.  What I'm --
 5   another thing I'm a little bit concerned about here, it's easy
 6   enough to fix this 30-day issue, okay.
 7              MR. BOSTIC:  Right.
 8              THE COURT:  It's easy enough for me to put the onus
 9   on the defendants to be collegial and get you copies of the
10   documents unless they want to risk going and taking the
11   depositions again wherever they are, okay?  But in terms of
12   this document production, you know, I was -- it's been a while
13   since I've been in practice, but it was always just completely
14   typical for the first discovery out of the box to be the
15   plaintiffs' depositions, and I --
16              MR. BOSTIC:  Right.
17              THE COURT:  I find -- I always found that
18   appropriate whether I was defending the case or bringing the
19   case.  So I'm not going to -- what I'm telling you is I'm not
20   going to muck up their desire to take the depositions based on
21   a motion that I don't even have before me.  But what I'm going
22   to do is this, and I'm going to ask you to prepare a proposed
23   stipulated order.
24              I'm going to give your clients 30 days from today
25   and that the deposition shall not take place any -- not later
```

```
 1   than 30 days from today.  It's my experience as a traveler, I
 2   don't have any particular judicial smarts about this, but as a
 3   traveler it is my experience that your best chance of getting
 4   a good ticket is if you make your reservations at least 30
 5   days before.
 6           I'm going to leave you to try to work out the
 7   document issue.  If the defendants are not happy with the
 8   product, if that doesn't get worked out and they're not happy
 9   with the deposition that they're able to take, any request for
10   a further deposition will be wherever your clients are.
11           Yes, Mr. Donnelly?
12           MR. DONNELLY:  Can I ask a question, Your Honor?
13           THE COURT:  Yes.
14           MR. DONNELLY:  I may have misheard you.  Are the
15   deps to take place after 30 days or within 30 days because --
16           THE COURT:  After 30 days.
17           MR. DONNELLY:  Okay.
18           THE COURT:  You can set a date and try to work
19   together as I would expect you would to get a date that's
20   mutually convenient for everyone.  But I'm going to give them
21   30 days from today, and I'm going to ask you to remain here
22   until you have a date, but I'm going to give them 30 days to
23   get their airline tickets.
24           All right.  And I have not given you any chance to
25   speak at all, Ms. Densham.  Is there anything you'd like to
```

```
 1   say?
 2           MS. VOGLER:  Ms. Vogler.
 3           THE COURT:  Oh, Ms. Vogler, I'm sorry.
 4           MS. VOGLER:  Yes, a couple of things I'd like to
 5   mention.
 6           First and foremost, I know that you said you
 7   reviewed my response.  You also saw my Exhibit A, which is a
 8   letter from Mr. Bostic to the head of the TNT team clearly
 9   indicating that my client, Nathan Edwards, who is no longer on
10   the TNT team has no access, possession or control.
11           THE COURT:  That's okay because he's going to have
12   to bring a motion.  I'm not deciding that issue today.  It's
13   not in front of me.
14           MS. VOGLER:  Okay.  I wanted that to be clear
15   that --
16           THE COURT:  I did understand that from your
17   response.
18           MS. VOGLER:  Very good.  I had no reason to believe
19   when I served the request for deposition that at least Mr.
20   Peffer was not in the state.  The complaint alleges that he is
21   a Michigan resident, so I had every reason to believe that he
22   was local and here and available.
23           And I did give them 22 days' notice on my second
24   notice of taking deposition.  They still had 22 days before
25   the date.  And before filing this motion, even before the
```

1   hearing today, Mr. Bostic never proposed another date.  He
2   never contacted me by e-mail or telephone to propose another
3   date.  Had he done so, we wouldn't be standing here right now.
4              THE COURT:  Well, he's going to have to today, okay?
5              MS. VOGLER:  Very good.  Very good.
6              THE COURT:  And I'm relying on the fact that I have
7   not had a ton of this type of motion from Mr. Bostic in terms
8   of keeping my patience levels down because me scheduling
9   plaintiffs' and defendants' depositions is not a good use of
10  my time.
11             MS. VOGLER:  I couldn't agree more.
12             THE COURT:  All right.  So you are blameless in this
13  matter, I'm giving Mr. Bostic a pass, and I'm sorry that I
14  misidentified you.
15             MS. VOGLER:  That's all right.
16             THE COURT:  Ms. Densham, is there anything you'd
17  like to say?
18             MS. DENSHAM:  No, Your Honor, thank you.
19             THE COURT:  All right.  Mr. Donnelly?
20             MR. DONNELLY:  No, Your Honor.
21             THE COURT:  All right.  Mr. Bostic, would you get
22  that -- first decide on a date among yourselves and get that
23  proposed -- can you get that proposed order circulated,
24  starting to be circulated by the end of tomorrow?
25             MR. BOSTIC:  Yes.

```
 1              THE COURT:  Okay.  All right.  And at any rate, so
 2   I'm going to make sure you don't leave here until you have a
 3   date, not --
 4              MS. VOGLER:  Until we have an agreement?
 5              THE COURT:  You have at least 30 days before the
 6   depositions take place.  Okay.
 7              MS. VOGLER:  I understand.  And in the event -- I
 8   would hope that all counsel would be in agreement to extend
 9   the discovery deadline in the event that there -- since the
10   depositions are being taken later in the discovery period than
11   I otherwise would have chosen to be.
12              THE COURT:  I'm not making that decision today
13   either, okay?
14              MS. VOGLER:  Very good.  Thank you.
15              THE COURT:  I only decide the things that I have
16   read about, thought about.
17              MS. VOGLER:  Okay.
18              THE COURT:  Not based on your creative whims.
19              MS. VOGLER:  Okay.
20              THE COURT:  All right.  Good day to all of you.
21              MS. VOGLER:  Thanks.
22              THE COURT:  And please let us know when you have a
23   date and we'll then look for the proposed stipulated order.
24   All right.
25              MR. BOSTIC:  Thank you, Your Honor.
```

1          (Proceedings concluded at 11:27 a.m.)

3                      *     *     *

5                    CERTIFICATE OF REPORTER

7          I, Kevin W. Gaugier, Official Court Reporter for the
8     United States District Court for the Western District of
9     Michigan, appointed pursuant to the provisions of Title 28,
10    United States Code, Section 753, do hereby certify that the
11    foregoing is a true and correct transcript of the proceedings
12    had in the within-entitled and numbered cause on the date
13    hereinbefore set forth.
14         I do further certify that the foregoing transcript
15    was prepared by me.

19    /s/   Kevin W. Gaugier

20    Kevin W. Gaugier, CSR-3065
      U.S. District Court Reporter
21    110 Michigan N.W.
      622 Federal Building
22    Grand Rapids, MI 49503